## THE PLYMOUTH.

## THE NORTHLAND.

(Circuit Court of Appeals, Second Circuit.   January 12, 1921.)

Nos. 78, 79.

**1. Collision ⊕═90—Statute limiting rate of "speed" refers to speed over ground.**

Laws N. Y. 1882, c. 410, § 757, providing that steamers shall not be propelled in East River below Corlears Hook at a greater rate of speed than eight miles an hour, means speed over the ground, including the speed of the tide.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Speed.]

**2. Admiralty ⊕═109—Vessel cannot rely on fault of another intentionally not assigned.**

Where both vessels violated the statute limiting their speed, but the overtaking vessel deliberately refrained from charging the overtaken vessel with negligence on that ground, and assigned no error in connection with it, she cannot on appeal avail herself of it as a fault.

**3. Collision ⊕═94—Overtaking vessel held at fault for speed, for failure to get passing assent, and for crowding.**

A steamship, which undertook to pass another going in the same direction while rounding Corlears Hook, *held* at fault for violating the state statute limiting speed at that point, for attempting to pass the vessel ahead without getting the assent of the other vessel, as required by Inland Regulations, rule 8, and for crowding the overtaken vessel too close to the shore, so as to compel her to reverse, as a result of which she collided with a tug following her.

**4. Collision ⊕═94—Overtaken vessel held at fault for not sooner reversing.**

A vessel, which collided with a following tug when she was compelled to reverse suddenly on being crowded too close to the shore by another overtaking steamer, *held* at fault for not sooner reversing when she saw that the other steamship was intending to pass without getting her assent, and knew that the traffic ahead made such an attempt dangerous.

Appeal from the District Court of the United States for the Southern District of New York.

In Admiralty.   Separate libels by the Erie Railroad Company against the steamer Plymouth, the New England Steamship Company, claimant, in which the steamer Northland, the Eastern Steamship Corporation, claimant, was brought in under the fifty-ninth rule, and by the New England Steamship Company against the steamer Northland, the Eastern Steamship Corporation, claimant, in which the steam tug Albert J. Stone was brought in under the fifty-ninth rule.   From decrees against the Northland for the damages, both to the Stone and the Plymouth, the claimant of that vessel appeals.   Reversed, with directions.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (Robert S. Erskine, of New York City, of counsel), for the Northland.

Haight, Sandford, Smith & Griffen, of New York City (John W. Griffen, of New York City, of counsel), for the Plymouth.

Park & Mattison, of New York City (Henry E. Mattison, of New York City, of counsel), for the Albert J. Stone.

⊕═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before WARD, ROGERS, and MANTON, Circuit Judges.

WARD, Circuit Judge. April 15, 1916, at five p. m. the side-wheel passenger steamer Plymouth, about 350 feet long, left her berth at Pier 15, North River, bound on her regular trip to Fall River. At the same time the single screw steamer Northland, 330 feet long, left her berth at Pier 19, North River, some distance higher up, bound on one of her regular trips to Portland.

The Plymouth is a 15-knot and the Northland a 17-knot, boat, and each knew exactly where the other was going, and particularly that each would have to round Corlears Hook on a starboard helm. It was stipulated that the flood tide was running there at 4-knot strength straight along the New York shore over to a point a little below the ferry slips on the Brooklyn side. The vessels reached that point at about 5:20 p. m.

What there happened was that the Northland passed ahead of the Plymouth and then starboarded to go up the river on the Brooklyn side. The master of the Plymouth says he ported to prevent her bow from being carried to port by the suction of the Northland's propeller, and was so crowded over to the Brooklyn shore that he could not turn up the river on a starboard helm, and was only prevented from running into the Brooklyn ferry slips by reversing full speed astern. As she came astern, the Plymouth struck the tug Albert J. Stone, proceeding up the river with a hawser tow, causing considerable damage, to recover which this libel was filed by the Erie Railroad Company, owner of the tug, against the Plymouth, who brought in the Northland under the fifty-ninth rule. The owner of the Plymouth subsequently libeled the Northland, which brought in the tug Stone under the fifty-ninth rule.

As the two steamers were passing between Brooklyn and Manhattan Bridges, they saw the Brooklyn side of the river was quite congested with traffic. A Red Star tug with a hawser tow was going up; a little above and to the starbord of her the libelant's tug Stone, with a hawser tow of three boats abreast, was also going up; a little above and to the port of her the ferryboat Maine was on her way up from the Roosevelt Street ferry on the New York shore to her slip on the Brooklyn shore; to the starboard of the ferryboat, New York & New Haven Transfer No. 11, with a carfloat on each side, was going up; close in to the ferry slips on the Brooklyn side the tug Pioneer was coming down; on the New York side a transfer with two car floats was rounding Corlears Hook.

[1, 2] Section 757 of chapter 410 of the Laws of 1882, the New York City Consolidation Act, provides that steamers shall not be "propelled" in the East River below Corlears Hook at a greater rate of speed than 8 miles an hour. We think such speed means over the ground and includes the tide. Both vessels violated the statute. But as the Northland carefully and deliberately refrained from charging the Plymouth with negligence on this ground, and has assigned no error in connection with it, she cannot avail of it as a fault.

The principal dispute was as to the violation of rule 8 of the Inland

Regulations: First, whether the Northland or the Plymouth was the overtaking vessel, it being admitted that the overtaking vessel did not blow any signal and passed ahead without getting the assent of the overtaken vessel; and, second, whether the Northland crowded the Plymouth into the Brooklyn shore. The trial judge dismissed the libel of the Erie Railroad Company, owner of the tug Stone, against the Plymouth, and entered a decree against the Northland for the damages both of the Stone and the Plymouth.

[3] We adopt the findings of the District Judge that the Northland violated the provisions of the New York Consolidation Act in respect to speed in the East River below Corlears Hook; that she was the overtaking vessel and violated rule 8 by passing the Plymouth without blowing a signal and receiving her assent and in crowding the Plymouth into the Brooklyn shore.

[4] There remains the inquiry whether the Plymouth was free from fault. Her liability depends upon whether she stopped and reversed as seasonably as she should have done under the circumstances, and we are of opinion that she did not. Her log shows that the Northland was seen coming up on her port quarter when she was abreast of Pier 20 below the Brooklyn Bridge. A considerable turn on the starboard helm is necessary in rounding Corlears Hook. The master, knowing that the Northland was a faster boat and was overtaking the Plymouth, and seeing that there was a great congestion of vessels ahead going up the river, ought for the protection of those vessels to have stopped and reversed sooner, notwithstanding that the Northland was violating the overtaking rule in passing without his assent. The engineers of the Plymouth were not called as witnesses. No log showing the orders to the engine room was produced, nor any evidence given that her engines were stopped and reversed before the two steamers reached the point where it was necessary to starboard in order to round the Hook. Had this been seasonably done, the whole mixup would have been avoided.

We discover no fault on the part of the Stone, which, though an overtaking vessel, had no reason to expect that the Plymouth would stop and back into her. With a hawser tow, on a flood tide, she could do little to keep out of the way.

The decrees are reversed, and the court below directed to enter a decree in favor of the Erie Railroad Company, owner of the tug Albert J. Stone, against the steamers Plymouth and Northland, their claimants and stipulators, and in favor of the New England Steamship Company, owner of the steamship Plymouth, for one-half her damages against the steamer Northland, her claimants and stipulators.